**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Leslie L. Smith, | Case No. 0:17-cv-01949 (RHK/FLN) |
| Plaintiff, | |
| v. | **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |
| Auto Club Services, Inc., | |
| Defendant. | |

## INTRODUCTION

Plaintiff brings a seven-count Complaint against Auto Club Services, Inc. ("Auto Club") related to a contractual arrangement under which she managed a business and sold Auto Club products. Plaintiff does not allege Auto Club violated the parties' agreement in any way. Instead, she rests her vaguely-described dispute on projections of future financial performance.

Plaintiff pleads fraud-based claims in Counts I, II, and V-VII and employment-based-claims in Counts III and IV. The fraud claims fail because they do not satisfy either Rule 9(b) or the requirements of the common-law and statutory theories asserted. Plaintiff's employment claims fail because she does not demonstrate entitlement to any of the relief she seeks under the Fair Labor Standards Act.

Auto Club first provides a brief overview of the factual background for Plaintiff's claims, along with a statement of the legal standard governing this motion. From there,

Auto Club argues for dismissal of all fraud-based claims as well as all of the employment-based claims.

## FACTUAL BACKGROUND

Plaintiff signed an Entrepreneurial Agent Agreement ("EA Agreement") with Auto Club on June 26, 2014, agreeing to sell Auto Club insurance policies and AAA memberships. (Complaint, ¶ 7). Prior to signing the EA Agreement, Plaintiff met with a recruiter to discuss Auto Club's business operations. (*Id.*, ¶ 18). Plaintiff alleges the recruiter gave her revenue projections that the recruiter described as very conservative numbers. (*Id.*, ¶¶ 18-19). Plaintiff began her operation on November 24, 2014, and Auto Club paid her through commissions on her sales. (*Id.,* ¶¶ 24, 69). Plaintiff contends her disappointing revenue resulted from Auto Club's credit score requirements and the low credit scores of many customers in her assigned territory. (*Id.*, ¶¶ 25, 27, 42). Plaintiff closed her office on June 1, 2017, and filed the present lawsuit one week later. (*Id.*, ¶ 46).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, a court treats well-pleaded facts as true and allows the non-moving party reasonable inferences from such facts. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). But courts are "not bound to accept as true a legal conclusion couched as a factual allegation," and such "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A Rule 12(b)(6)

motion should be granted if the non-moving party fails to plead facts sufficient to state a claim "that is plausible on its face" and would entitle the party to the relief requested. *Twombly*, 550 U.S. at 570.

## ARGUMENT

### I. Plaintiff's Fraud-Based Claims Fail to Satisfy the Heightened Pleading Requirement of Rule 9(b).

Counts I, II, and V-VII of Plaintiff's Complaint urge fraudulent activity but lack the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiff must state a plausible claim for which relief is legally available. She has not done that. Plaintiff must also satisfy the heightened pleading requirements for her fraud-based claims: "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (internal quotation and citation omitted). She has most emphatically not done that. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient." *Ogletree, Abbott, Clay & Reed Law Firm, L.L.P. v. FindLaw*, No. CIV. 14-340 RHK/TNL, 2014 WL 2611862, at *3 (D. Minn. June 11, 2014) (internal quotation and citation omitted).

The heightened standard requires a plaintiff to plead facts such as "the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.*, 690 F.3d 951, 955 (8th Cir. 2012) (internal quotation and citation omitted).

3

Failure to do so is grounds for dismissal. *Id.* This standard applies to all of Plaintiff's fraud-based claims:

- Count I alleges unfair and inequitable conduct under the Minnesota Franchise Act, which is governed by the "heightened pleading requirement" of Rule 9(b). *Midwest Theatres Corp. v. IMAX Corp.*, No. CIV. 08-5823 DSD/SRN, 2009 WL 649701, at *2 (D. Minn. Mar. 11, 2009).

- Count II alleges violations of the Minnesota Deceptive Trade Practices Act, which is also governed by the heightened fraud pleading standard. *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665-66 (8th Cir. 2012).

- Count V is a claim for common-law fraud, likewise governed by Rule 9(b). *Midwest Theatres Corp.*, 2009 WL 649701, at *2.

- Count VI alleges unjust enrichment. When "allegations of fraud underlie the unjust enrichment claim" the heightened pleading standard of Rule 9(b) applies. *United States v. Henderson*, No. CIV.03-5060 (MJD/JDL), 2004 WL 540278, at *2 (D. Minn. Mar. 16, 2004).

- In Count VII, Plaintiff seeks a declaratory judgment. Because this, too, is based on a theory of fraudulent misrepresentation, it is also governed by Rule 9(b). *Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010) ("Under Minnesota law, any allegation of misrepresentation . . . is considered an allegation of fraud which must be pled with particularity.").

Plaintiff claims she "received projections from Kelli Price . . . for revenue that she could anticipate if she signed the EA Agreement" and was told in May 2014 "the

4

projections were 'very conservative numbers. . . .'" (Complaint, ¶¶ 18-19).  Plaintiff then alleges the projections "were not true." (*Id*, ¶ 27).  Because these allegations fail to state the where, the what, and the how of what supposedly happened, they fail.  *Summerhill*, 637 F.3d at 880.  The Complaint pleads no factual basis for the conclusions that the projections were knowingly false or made without a reasonable basis.  The Complaint says nothing about what the projections were, how they were false, or why they were fraudulent.  Plaintiff pleads only conclusions.

In *Ogletree*, 2014 WL 2611862, at *3, plaintiff's complaint failed because it relied on vague and conclusory allegations.  The complaint asserted:

> "[Defendant] has represented its goods or services have characteristics or benefits, which they do not have, represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law[,] and failed to disclose information concerning goods or services which was known at the time of the transaction."

*Id.* (quoting plaintiff's complaint).  This Plaintiff's allegations are no different.  She fails to plead specific facts; she fails to say how any projection was known to be false.  As a result, Plaintiff's fraud-based claims (Counts I, II, and V-VII) should be dismissed for failure to plead fraud with particularity.

**II.   Even if Sufficiently Pleaded Under Rule 9(b), Plaintiff's Fraud-Based Claims Fail for Substantive Reasons As Well.**

   **A.   Plaintiff's Franchise Act Claim (Count I) Should Be Dismissed Because Plaintiff Has Not Pleaded a Franchise Relationship.**

To state a claim under the Minnesota Franchise Act, a plaintiff must first plead a franchise.  *Clear Wave Hearing Instruments, Inc. v. Starkey Holding Corp.*, No. CIV. 11-

5

1562 DWF/SER, 2012 WL 949953, at *6 (D. Minn. Mar. 20, 2012).  The Minnesota Franchise Act defines a franchise as (a) a contract or agreement; (b)(i) by which a franchisee is granted the right to engage in the business of offering or distributing goods or services using the franchisor's trademark; (b)(ii) in which the franchisor and franchisee have a "community of interest in the marketing of goods or services"; (iii) and for which the franchisee pays, directly or indirectly, a franchise fee.  Minn. Stat. § 80C.01, subd. 4(a).  Clear on the face of her Complaint, Plaintiff's business arrangement with Auto Club was not a franchise because Plaintiff never paid a franchise fee.

"Franchise fee" is defined by the Minnesota Statute.  It is a fee or charge a franchisee pays "for the right to enter into a business."  The statute explicitly excludes the purchase of supplies or fixtures "necessary to enter into the business."  Minn. Stat. § 80C.01, subd. 9.  "[O]rdinary business expenses . . . are not considered franchise fees unless they are unreasonable and lack a valid business purpose."  *Day Distrib. Co. v. Nantucket Allserve, Inc.,* No. 07-CV-1132 PJS/RLE, 2008 WL 2945442, at *5 (D. Minn. July 25, 2008).

In *Day*, the court considered whether minimum sales requirements, supply purchases, and cooperative advertising fees constituted a franchise fee within the meaning of the Minnesota Franchise Act.  *Id.*  The court determined they were not; they were ordinary business expenses.  *Id.*  To constitute a franchise fee under the Act, such business expenses must have been unreasonable or lacked a valid business purpose; but the purchases and fees before it were neither unreasonable nor lacking in a valid business purpose.  *Id.*  Plaintiff's contention it lost money on the business and was unable to make

6

its sales goals was unpersuasive. *Id.* at *6-7; *see also Clear Wave Hearing Instruments*, 2012 WL 949953, at *7 (determining "minimum purchase requirements, training fees, and advertising fees" were insufficient to establish the existence of a franchise fee.).

This Plaintiff's allegations are indistinguishable from Day's. She says she paid a franchise fee "in the form of various required product purchases, commissions, and other expenditures required for her performance." (Complaint, ¶ 51). She makes no claims these purchases, commissions, or expenditures were unreasonable or that they lacked a valid business purpose. Her complaints that she "suffered substantial losses" and "disappointing revenue" are identical to the ones in *Day*. Just as Day Distributing Company's allegations were insufficient as a matter of law, so is Plaintiff's Minnesota Franchise Act claim (Count I); and it should be dismissed as well.

    **B.**    **Plaintiff's Deceptive Trade Practices Act Claim (Count II) Should Be Dismissed Because Plaintiff Does Not Allege Harm to Others. The Act is Not Triggered by Plaintiff's Allegations.**

The Minnesota Deceptive Trade Practices Act ("MDTPA") is a consumer protection statute that authorizes private lawsuits when the cause of action benefits the public. *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1109 (D. Minn. 2010). To survive a motion to dismiss, a complaint must allege the challenged conduct caused harm to others besides the plaintiff, or was part of a broader pattern of illegal conduct. *Id.* "A misrepresentation made to only one person as part of a single transaction simply does not support a private-attorney-general action under the MDTPA," otherwise the class of plaintiffs would be limitless. *Id.* at 1109-10. In *DeVary*, the plaintiff brought suit against his lender for failure to provide him accurate and adequate

7

disclosures upon refinancing his home. *Id.* at 1098. The court ruled that, as plaintiff had not alleged the defendants' conduct caused harm to others, it should be dismissed. *Id.* at 1109-10.

This Plaintiff is no different. Like her counterpart in *DeVary*, she fails to allege Auto Club's alleged violations harmed anyone else or were part of a pattern of illegal conduct. The court will not assume "that one individual's negative experience with a company was necessarily duplicated." *Id.* at 1109. As a result, Plaintiff's MDTPA claim cannot proceed.

Additionally, "[b]ecause the MDTPA provides relief for 'a person likely to be damaged,' it provides relief from future damage, not past damage." *Four D., Inc. v. Dutchland Plastics Corp.*, No. CIV 01-2073 RHK/JMM, 2002 WL 570655, at *4 (D. Minn. Apr. 15, 2002) (quotation omitted). Thus, to state an MDTPA claim, the plaintiff must allege "a likelihood of future harm." *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. CIV 14-869 PAM/TNL, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014). When all of the activities providing a factual basis for the claim occurred in the past, an MDTPA claim cannot succeed. *See Four D., Inc.*, 2002 WL 570655, at *4.

Plaintiff's Complaint establishes the relationship between Auto Club and Plaintiff has concluded. All of Plaintiff's allegations of misconduct occurred in the past, before and during the continuance of her business venture with Auto Club. Because Plaintiff has not and cannot show she is likely to suffer future harm, her MDTPA claim fails.

Even if Plaintiff had pleaded harm to others, and could allege a likelihood of future harm, her claim still fails to allege a trade practice deemed unlawful under the

8

MDTPA and should be dismissed for this reason. The MDTPA lists thirteen specific acts that constitute prohibited deceptive trade practices; Plaintiff has alleged none. Minn. Stat. § 325D.44.

The common thread of the prohibited acts enumerated in the MDTPA is the mistaken "identity of a product, or one of a product's essential aspects, for that of another product." *Cohen v. Mortg. Elec. Registration Sys., Inc.*, No. CIV.08-1394 ADM/JSM, 2009 WL 4578308, at *3 (D. Minn. Dec. 1, 2009). In *Cohen*, plaintiff alleged the defendant engaged in a deceptive trade practice when the defendant misrepresented how mortgage payments were calculated, paid, and posted. *Id.* at *4. The court ruled no deceptive trade practice had occurred because the alleged deception did not relate to the "the source, sponsorship, approval, certification, affiliation, connection, association, designation of geographic origin, ingredients, uses, benefits, number of sponsors, newness, status, quality, standard, grade, style, or model [or any other similar quality] of goods or services." *Id.* at *3-4.

Here, too, none of the allegations in Plaintiff's Complaint fits within the statutory definition of a deceptive trade practice. Plaintiff says she was deceived about the profitability of the business venture and Auto Club's intention to re-evaluate its policies. (Complaint, ¶¶ 56-57). Because neither relates to an essential aspect or quality of a good or service, they cannot support an MDTPA claim. *See Cohen*, 2009 WL 4578308, at *3-4. As the MDTPA has no application here, Plaintiff's Count II should be dismissed.

9

### C.  Plaintiff's Common-Law Fraud Claim (Count V) Should Be Dismissed Because Plaintiff Has Not Sufficiently Pleaded a False Representation of a Past or Existing Material Fact Susceptible of Knowledge.

Plaintiff's fifth cause of action is for common-law fraud.  She pleads two bases for it: Auto Club gave her false projections; Auto Club failed to tell her about low credit scores in the territory.  (*Id.,* ¶¶ 82-83).  Neither supports a fraud claim.

Common-law fraud claims require proof of "a false representation of a past or existing material fact susceptible of knowledge."  *U.S. Bank N.A. v. Cold Spring Granite Co.*, 802 N.W.2d 363, 373 (Minn. 2011).  Profit projections that turn out to be false may form the basis of a fraud claim, "but only if they are false representations of a past or present material fact.  Otherwise, expected profits are irrelevant to misrepresentation claims because expected profits are not recoverable damages in Minnesota for fraud."  *Crowell v. Campbell Soup Co.*, 264 F.3d 756, 764 (8th Cir. 2001) (internal citations omitted) (citing *Berg v. Xerxes–Southdale Office Bldg. Co.,* 290 N.W.2d 612, 615 (Minn.1980)).

In *Crowell*, a group of plaintiffs agreed to raise chickens the defendant placed into their facilities.  After the agreement ended, they sued.  Among other things, they claimed the defendant made profit projections prior to the contract's formation that never came to fruition.  *Crowell*, 264 F.3d at 759-60.  Just as here, the *Crowell* plaintiffs' complaint failed to allege "any specific misrepresentations of a past or present material fact"; there were only projections of future performance.  *Id.* at 764.  The Eighth Circuit rejected the fraud claim.  Ruling the projections were nothing more than estimates that were, in

10

hindsight, underestimations, the court concluded the plaintiffs' allegations were not "clear misrepresentations of past or present material fact." *Id.*

Here, Plaintiff does even less than the plaintiffs in *Crowell*, failing to specify what projections were made or why she claims they were false. As in *Crowell*, this Complaint fails to identify any specific misrepresentation of a past or present material fact. Plaintiff has only "future profit projections" she sees as inaccurate through the lens of hindsight. *See Crowell*, 264 F.3d at 764. Projections are not facts and do not support a fraud claim.

Auto Club's alleged failure to disclose the credit scores fares no better. As a general rule, a party's failure to disclose information cannot support a fraud claim because "one party to a transaction has no duty to disclose material facts to the other." *Smith v. Questar Capital Corp.*, No. 12-CV-2669 SRN/TNL, 2014 WL 2560607, at *14 (D. Minn. June 6, 2014). A party without actual knowledge of allegedly undisclosed facts cannot be under a duty to disclose them. *Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 651 (Minn. 1976). In *Bonhomme Inv. Partners, LLC v. Hayes*, 2015 WL 6702257, (E.D. Mo. Nov. 2, 2015) the court determined plaintiffs' fraud claim could not survive because plaintiffs' complaint contained only a formulaic recitation that defendant "knew or should have known" of the undisclosed facts. Because the complaint pleaded no facts demonstrating how or why the defendant knew or should have known, it failed. *Id.* at *4.

Like her counterpart in *Bonhomme*, this plaintiff makes a formulaic recitation that "Defendant knew or should have known the average credit scores in the territory."

11

(Complaint, ¶ 82).  Because it lacks factual allegations of actual knowledge, the claim fails.  *Richfield*, 244 N.W.2d at 651.

Even if Plaintiff sufficiently alleged Auto Club's actual knowledge of the credit scores, Minnesota law generally does not require a party to a transaction to disclose known facts.  *Smith*, 2014 WL 2560607, at *14.  This rule applies unless (1) there is a fiduciary or confidential relationship between the parties, (2) one party was in possession of special facts that could not have been discovered by the other, or (3) one party chooses to speak, but omits information so as to make the information actually disclosed misleading.  *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619, 622 (Minn. 1972).  None of the exceptions applies.

Plaintiff makes no claim that a fiduciary or confidential relationship existed between the parties.

The special knowledge exception does not apply here.  "For the specialized-knowledge circumstance to trigger a duty to disclose . . . , the plaintiff must allege that the defendant had 'actual knowledge of fraudulent activities.'" *Jaskulske v. State Farm Mut. Auto. Ins. Co.,* No. CIV 14-869 PAM/TNL, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (quoting *Richfield*, 244 N.W.2d at 652)).  This Plaintiff makes no such claim.  Additionally, Minnesota courts have applied the exception in only one case.  *See Graphic Comms. Local v. CVS Caremark Corp.*, 850 N.W.2d 682, 698 (Minn. 2014) ("we have only applied the special-knowledge theory in one case, and that case is factually distinguishable").  In the sole instance where the exception was applied, *Richfield*, 244 N.W.2d at 650, the Minnesota court ruled a bank that had actual

12

knowledge that one of its depositors was irretrievably insolvent engaged in fraud by entering into a contract with the plaintiff without disclosing the depositor's insolvency. *Richfield* is not remotely applicable to the present case.

Finally, Plaintiff makes no allegation that Auto Club chose to speak at all regarding credit scores or that, in speaking about them, Auto Club omitted information. Auto Club's alleged omission regarding credit scores cannot support a fraud claim.

> **D. Plaintiff's Unjust Enrichment Claim (Count VI) Should Be Dismissed Because a Valid Contract Governs, and Plaintiff is Not Entitled to Plead Equitable Claims in the Alternative.**

In Minnesota, when a valid contract governs the parties' relationship, a plaintiff is "not entitled to plead equitable claims in the alternative." *Clear Wave Hearing Instruments*, 2012 WL 949953, at *7 (granting the defendant's motion to dismiss as a valid contract indisputably governed the parties relationship). This is particularly true where the "parties agree that their dispute is governed by their contract." *European Roasterie, Inc. v. Dale*, No. CIV 10-53 DWF/JJG, 2010 WL 1782239, at *4 (D. Minn. May 4, 2010). In this case, like in *European Roasterie*, plaintiff makes no claim the EA Agreement did not apply to the parties.

When a valid contract applies to the dispute, an unjust enrichment claim may proceed only if the plaintiff's claims exceed the scope of that contract. *See Roth v. Life Time Fitness, Inc.*, No. CV 15-3270 JRT/HB, 2016 WL 3911875, at *3 (D. Minn. July 14, 2016). In *Roth*, the court dismissed the unjust enrichment claim because Roth failed to "plead any facts that would make it possible for the Court to determine whether [ ] the conduct at issue . . . fell outside or within the scope of th[e parties'] contract." *Id.*

13

Plaintiff here is no different.  Because she makes no claim the challenged conduct was outside of the scope of the EA Agreement, her unjust enrichment claim should be dismissed.

### E. Plaintiff's Declaratory Judgment Claim (Count VII) Should Be Dismissed Because Plaintiff Has Not Pleaded a False Representation of a Past or Present Material Fact.

Plaintiff seeks a declaratory judgment that Auto Club fraudulently induced her to enter into the EA Agreement.  To state a claim for fraudulent inducement under Minnesota law, a plaintiff must plead that a defendant made a false representation of a past or present material fact.  *Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002).  Once again it is the projections that are the basis of her claim.  (Complaint, ¶ 93).  Because they are no more useful to her in Count VII than they were before, Count VII should be dismissed.  *Crowell*, *supra.*

## III. Plaintiff's Employment-Based Claims Should Be Dismissed.

In Counts III and IV, Plaintiff says if she "is not deemed" a franchisee then she is actually an employee – and has been improperly classified by Auto Club in violation of the Fair Labor Standards Act ("FLSA").

No entitlement to relief appears in Count III.  The FLSA requires employers to pay "employees" at least the minimum wage, and to pay overtime for any hours worked in excess of 40 in a given workweek.  29 U.S.C. §§ 206-207.  The FLSA does not require straight-time pay in excess of the minimum wage.  *Terrell v. First Student Management, LLC*, 4:16-cv-481, 2016 WL 6679847, at *2-3 (E.D. Mo. Nov. 14, 2016) (explaining distinction between overtime and straight time and clarifying straight-time claims must

14

be brought as common-law contract claims); *LePage v. Blue Cross & Blue Shield of Minn.*, No. CIV. 08-584 RHK/JSM, 2008 WL 2570815, at *2 (D. Minn. June 25, 2008) (same). And, the FLSA does not establish misclassification as an independent contractor as a statutory violation. Accordingly, no cause of action is pleaded in Count III.

If one generously considers that Counts III and IV should be read together, it appears Plaintiff contends she was misclassified, should have received overtime under the FLSA, and did not. (Complaint, ¶¶ 76-78). Still, her claims fail.

The FLSA requires overtime be paid to employees for any hours of work in excess of 40 in a workweek (29 U.S.C. § 207) *unless* the employee's pay and/or duties render her exempt from the overtime requirements. 29 U.S.C. § 213, *et seq.* Even if she were an employee, Plaintiff's own description of her business activities establishes numerous exemptions to employee status that apply directly to her. For example, Plaintiff alleges her primary duty was the sale of Auto Club insurance products. *See* 29 U.S.C. 213(a)(1) (outside sales exemption). Plaintiff also alleges she opened and managed an Auto Club office wherein she was the highest ranking executive, she hired employees, and she directed their work. *See id.* (bona fide executive exemption). Because Plaintiff failed to plead her position involved non-exempt job duties, and because what she does plead establishes she was exempt, her overtime claim fails.

In addition to her fundamental failure to plead entitlement to overtime, Plaintiff's Complaint is insufficient to demonstrate entitlement to any relief under the FLSA. Even if she were non-exempt, Plaintiff's only allegation of entitlement to overtime is that she "at times, worked more than forty (40) hours per week." Complaint, ¶ 76. Minnesota

15

courts demand more than that. *See Bailey v. Border Foods, Inc.*, CIV No. 09-1230 RHK/AJB, 2009 WL 3248305 (D. Minn. Oct. 9, 2009) (an FLSA minimum wage claim should "indicate the applicable rate or pay and the amount of unpaid minimum wages due"); *LePage v. Blue Cross & Blue Shield of Minn.*, No. CIV. 08-584 RHK/JSM, 2008 WL 2570815, at *4 (D. Minn. June 25, 2008) ("Plaintiffs have not even alleged that they worked more than 48 hours in any workweek. Instead, they have simply recited the legal elements for a violation of the overtime provisions of the Minnesota FLSA."). *Compare Schmidt v. DIRECTV, LLC*, No. CV 14-3000 JRT/JSM, 2016 WL 519654, at *13 (D. Minn. Jan. 22, 2016) (refusing to dismiss when plaintiffs pleaded length of workweek, the amount of overtime worked per week, and identified numerous unlawful deductions that caused their compensation to be insufficient). This Plaintiff has failed to identify a single calendar week in which she worked more than 40 hours; she has not even totaled the pay to which she claims she was entitled. All of her employment claims should be dismissed.

## CONCLUSION

Plaintiff may be disappointed in the results of her EA Agreement with Auto Club. But she may not vent her disappointment through the FLSA unless she pleads some entitlement to it. She has not done that; and what she has pleaded shows she is neither a non-exempt employee nor misclassified.

Neither was she defrauded. All of her other claims arise from allegations of fraud. None is pleaded with the required specificity; substantively, none satisfies the elements of her several causes of action.

Auto Club asks the Court to grant its motion and dismiss this case.

Dated: July 21, 2017

Respectfully submitted,

AUTO CLUB SERVICES, Inc.

/s/Douglas R. Boettge
Douglas R. Boettge (#237292)
Kristin Berger Parker (#0389249)
STINSON LEONARD STREET LLP
150 South Fifth Street, Suite 2300
Minneapolis, Minnesota  55402
Telephone:  (612) 335-1500
Facsimile:   (612) 335-1657
Email: douglas.boettge@stinson.com
Email: kristin.parker@stinson.com

and

William Sampson (*pro hac vice*)
Kristen A. Page (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone:  (816) 474-6550
Facsimile:  (816) 421-5547
Email:  wsampson@shb.com
Email:  kpage@shb.com

**ATTORNEYS FOR DEFENDANT**